**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, AS SUBROGEE FOR DAN AND KIM RANSCHAU; AND DAN AND KIM RANSCHAU, | No. 20-CV-60 CJW-MAR |
| Plaintiffs, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| AIR VENTS, INC., | |
| Defendant. | |

_____

**TABLE OF CONTENTS**

I.      FACTUAL BACKGROUND ............................................................... 3

II.     SUMMARY JUDGMENT STANDARD ............................................... 7

III.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ..................... 10

        A.      Evidence .............................................................................. 10

                1.      Plaintiffs' Hearsay Argument ........................................ 10

                2.      Personal Knowledge ..................................................... 11

                3.      Hearsay ....................................................................... 14

                4.      Defendant's Sham Affidavit Argument .............................. 15

        B.      Summary Judgment ............................................................... 19

1

1.      Parties' Arguments ........................................................19

2.      Statute of Repose .......................................................20

        a.      Improvement to Real Property .................................21

        b.      Calculation.......................................................26

3.      Analysis ...............................................................27

IV.      PLAINTIFFS' MOTION FOR SANCTIONS .......................................28

     A.      Parties' Arguments................................................28

     B.      Relevant Law ......................................................29

     C.      Analysis................................................................29

V.      CONCLUSION ...........................................................31

2

This matter is before the Court on defendant's motion for summary judgment (Doc. 23) and plaintiffs' motion for sanctions (Doc. 43). On July 16, 2021, defendant filed a motion for summary judgment. (Doc. 23). Plaintiffs timely filed their resistance. (Doc. 36). Defendant timely filed its reply. (Doc. 42). On October 29, 2021, plaintiffs filed their motion for sanctions. (Doc. 43). Defendant timely filed its resistance. (Doc. 45). On November 5, 2021, the Court heard oral argument on both motions. (Doc. 46).

For the following reasons, defendant's motion for summary judgment is **denied** and plaintiffs' motion for sanctions is **granted in part** and **denied in part**.

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise described. The Court incorporates additional facts in its analysis as necessary.

In 2005 or 2006, plaintiff Dan Ranschau ("Ranschau") renovated the Ranschau home's attic by reshingling the roof, and replaced three existing turbine ventilators with ridge vents and a new electric attic fan with a built-in thermostat. (*See* Docs. 24, at 2; 26, at 53–56; 36-1, at 2–3; 36-2, at 2, 35–38; 38, at 2). In his declaration, Ranschau stated that he "installed [the fan] on an originally existing attic gable portion of the original house." (Doc. 36-3, at 20). Ranschau also stated that "an attic should have ventilation to prevent excess heating, moisture build-up and to maintain the life of the roof above" and that the three wind turbines had provided this ventilation prior to the renovation. (*Id.*). Thus, Ranschau installed the fan ("Ranschau fan") to "replace[ ] the ventilation shortage" that existed after he removed the three wind turbines. (*Id.*). Ranschau states the fan was not installed to address issues other than ventilation, including climate issues. (*Id.*).

3

Because plaintiffs did not keep their receipt for the Ranschau fan, it is unknown when and where Ranschau purchased it.[1] (Docs. 24, at 2; 36-1, at 4). The parties dispute when Ranschau asserted that he purchased the Ranschau fan because, essentially, they interpret his estimated dates differently. Plaintiffs say Ranschau purchased the fan sometime between late September/early October, 2005 and June 3, 2006. (*See* Doc. 36-2, at 1 (citing Doc. 36-3, at 8 (Plaintiffs' Response to Defendant's Interrogatories, No. 6), 17 (Declaration of Dan Ranschau))). Defendant says Ranschau purchased the fan sometime in late September/early October 2005. (*See* Doc. 38, at 1 (citing Doc. 26, at 5 (Plaintiffs' Complaint), 12 (Plaintiffs' Response to Interrogatory No. 6))).

On May 25, 2020, Ranschau discovered a fire coming from the Ranschau fan which damaged the Ranschau home. (Docs. 24, at 2; 36-1, at 1–2; 36-2, at 3; 38, at 4).

After the fire, plaintiffs hired forensic experts George Howe and Todd Hartzler ("Hartzler") to interview the Ranschaus, inspect the Ranschau home and attic fan, and give professional opinions on the fire and its cause. (Docs. 36-2, at 3; 38, at 3). Hartzler, an electrical engineer, concluded that a failure in the Ranschau fan started the fire. (Docs. 36-2, at 4; 38, 5–7). Hartzler then purchased a 2020 WCGB model fan manufactured by defendant to compare with the Ranschau fan. (Docs. 36-2, at 6; 38, at 7). After comparing the exemplar fan with the Ranschau fan, Hartzler opined that defendant manufactured the Ranschau fan. (Docs. 36-1, at 5; 36-2, at 6; 38, at 7).

---

[1] The parties' various filings sometimes refer to the Ranschaus purchasing the fan and sometimes refer to Ranschau purchasing it solely. The difference is immaterial. For convenience, the Court refers to the purchase as made by Ranschau.

On June 8, 2020, plaintiffs filed this action, alleging that defendant is liable in strict product liability[2] and negligence based on the fan's alleged manufacturing defects because the fan was manufactured by defendant. (Docs. 1; 24, at 1–2; 36-1, at 2).

Comparing the exemplar fan with the Ranschau fan, the parties' experts identified the key differences between the fans were the thickness of their motors and their ventilation patterns.[3] (Docs. 24, at 3–4; 36-1, at 6–8; 36-2, at 7; 38, 8–9). Still, defendant's CEO, Brad Holland ("Holland"), who is undisputedly defendant's most knowledgeable employee on historical product iterations (Docs. 36-2, at 8; 38, at 10), stated that, in 2012, defendant switched motor manufacturers for its WCGB and WCGA models. (Doc. 36-2, at 8 (citing Holland deposition)). Further, Holland stated that the Ranschau fan's motor matched the motor on defendant's pre-2012 WCGB or WCGA

---

[2] Plaintiffs' complaint lists Count 1 as defendant's liability in "strict liability," but does not specify which type of action plaintiffs pursue. (Doc. 1). Plaintiffs' complaint states that the fan "malfunctioned" and that it had a "manufacturing defect" when it left defendant's control. (*See id.*). Thus, the Court construes plaintiffs' strict liability action as based on a manufacturing defect.

[3] The difference in the motors' thickness is attributable to differences in both the motor stators' thickness and the motor rotors' thickness. In Plaintiffs' Statement of Additional Undisputed Material Facts, plaintiffs state: "The only component that appeared different between the Ranschau Fan and the exemplar model was the fan motor that had different thicknesses and ventilation patterns . . .." (Docs. 36-2, at 7). (*See also* Doc. 36-3, at 35–38 (Hartzler's Addendum comparing each part of the motors)). In response, defendant "denies that the cited record supports these allegations *as the report makes no mention of AVI design drawings*." (Doc. 38, 8–9) (emphasis added). Thus, defendant appears to deny this fact based on the lack of AVI design drawings in the cited record, not the report's allegations. The cited portion of the appendix refers to differences in motor stator and rotor thickness, which defendant does not deny. (Doc. 36-3, at 38). In fact, defendant asserts that the exemplar and Ranschau motors had different "vent-hole" patterns, stators, and rotors. (Docs. 24, at 3–4). Thus, the Court assumes that the parties agree that differences between the exemplar fan's motor and Ranschau fan's motor are in their ventilation patterns, stator thickness, and rotor thickness.

model fans.[4]  (*See* Docs. 36-1, at 6–7; 36-2, 7–8; 38, 9–10).  Defendant's expert, Jim Meyer ("Meyer") also distinguished the exemplar fan from the Ranschau fan, in part, based on its motor.  (Docs.  36-2, at 8; 38, at 11).  According to plaintiffs, neither plaintiffs' nor defendant's experts knew that defendant changed its ventilation pattern and motor thickness between when Ranschau purchased the fan and when the exemplar fan was manufactured.  (Docs. 36-2, at 8).

The exemplar fan also had a plastic sticker, identifying it as defendant's product. (Doc. 36-3, at 37).  The remains of the Ranschau fan recovered after the fire had no sticker.  (*Id.*).  According to plaintiffs, this sticker is the only way to identify an attic fan manufactured by defendant.  (Doc. 36-2, at 9).  Generally, the sticker disintegrates in a fire.  (*See* Docs. 36-2, at 9; 36-3, at 82; 38, at 12–13).  Despite this, Holland testified that the stickers are regulation compliant.  (Doc. 36-3, at 142).  Because defendant's fans have no identifying mark aside from the sticker, Holland relied on forensic experts to determine whether the Ranschau fan was manufactured by defendant.  (Doc. 36-2, at 9; 38, at 12–13).

Holland asserted, however, that the Ranschau fan might be an imposter fan made by one of defendant's competitors.  Holland's affidavit states that knock-offs of defendant's fans are prevalent.  (Doc. 26, at 34–35).  When deposed,  Holland stated that a Chinese company was selling "copycat units of Air Vent" fans between 2005 and 2010. (Doc. 36-3, at 142).  Holland could not, however, name a specific incident in which defendant prosecuted another business for generating an imposter fan product.  (Doc. 36-3, at 79).

---

[4] The WCGA model varies from the WCGB only in motor thickness.  (Docs. 36-2, at 7–8 (citing Holland deposition)).

Finally, Holland asserts that any fan manufactured by defendant would have been manufactured no later than January 2005, to be purchased by a consumer in late September/early October 2005.[5] (Doc. 36-2, at 13; 38, at 17–18). As later revealed in Holland's deposition, this estimated manufacturing timeline was based on information Holland obtained from defendant's officers Donnie Anderson ("Anderson") and Michael Hodges ("Hodges"). (Docs. 36-2, at 13; 38, at 18–19). Moreover, Holland testified that he does not possess and was not shown production records supporting this timeline. (Docs. 36-2, at 14; 38, at 19; 36-3, at 50, 67, 90).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

---

[5] Plaintiffs' Additional Statement of Material Fact reads: "if the fan was purchased in either late September, *2006* or early October, 2005, it would have historically been manufactured no later than January, 2005." (Doc. 36-2, at 13) (emphasis added). The Court assumes this is a typographical error, as Plaintiffs' Response to Defendant's Interrogatory No. 6 sets the purchase date range as "late September/early October 2005," and both parties cite this date. (*See, e.g.*, Docs. 26, at 15 (Plaintiffs' Response to Defendant's Interrogatory No. 6); 36-3, at 8 (same)).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

If the *moving* party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence, using any of the materials specified in Rule 56(c), "that would entitle it to a directed verdict if not controverted at trial." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (1993). If the moving party makes this showing, then the nonmoving party has the burden of production to produce evidentiary

8

materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. *Id.*

If the burden of persuasion at trial would be on the *nonmoving* party, then the party moving for summary judgment may satisfy Rule 56's burden of production in two ways, either by submitting affirmative evidence negating an essential element of the claim, or by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of its claim. *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018). If the moving party seeks summary judgment on lack of evidence, then the moving party must affirmatively show the absence of evidence. *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994). If the moving party does not satisfy this showing, however, then its motion for summary judgment must be denied, and the Court need not consider whether the nonmoving party has met its ultimate burden of persuasion. *Id.*

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary

judgment, the court "need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

## III.    *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

The Court will first consider defendant's motion for summary judgment.  Then the Court will consider plaintiffs' motion for sanctions.  Ultimately, the Court denies defendant's motion for summary judgment, and grants in part and denies in part plaintiffs' motion for sanctions.

Before the Court can consider the parties' arguments, however, it must first decide what evidence it can consider.

### A.    *Evidence*

As a preliminary issue, the Court must address plaintiffs' and defendant's arguments that the Court should not consider certain evidence when making its ruling on defendant's motion for summary judgment.  For the following reasons, the Court first finds that defendant's evidence about its 2005 manufacturing timeline ("manufacturing timeline") cannot be considered.  The Court then finds that one portion of Ranschau's supplemental declaration is a sham and thus strikes that portion from the record.  But this finding is ultimately inconsequential to the Court's holding.

### 1.    *Plaintiffs' Hearsay Argument*

The Court first addresses plaintiffs' assertion that the Court cannot consider defendant's evidence in support of its affirmative defense because it is hearsay.  The Court finds that Holland's statement about the manufacturing timeline in Paragraph 4 is inadmissible because Holland lacks personal knowledge and Rule 30(b)(6) does not apply.

Plaintiffs argue that defendant's evidence of its manufacturing timeline is inadmissible hearsay.  (Doc. 36, at 9–10).  Plaintiffs further assert that Holland had no personal knowledge of the manufacturing timeline.  (*Id.*).  Defendant's affirmative defense relies exclusively on Holland's statement about the manufacturing timeline in

Paragraph 4 of his affidavit, which states that a fan purchased in late September or early October 2005 could not have been manufactured after January 2005—that is, at least nine months prior to sale. (Doc. 26, at 31). During plaintiffs' deposition of Holland, Holland stated that he obtained information about the manufacturing timeline from defendant's officers Donnie Anderson and Michael Hodges. (Doc. 36-3, at 50). Defendant appears to argue that Holland's statement about the manufacturing timeline is admissible because Holland was identified as defendant's corporate representative under Federal Rule of Civil Procedure 30(b)(6) "[a]fter Mr. Holland submitted his affidavit." (Doc. 42, at 4).

The Court finds that it cannot consider defendant's evidence of its manufacturing timeline. Holland's affidavit is not based on personal knowledge and Rule 30(b)(6) offers no exception under the circumstances. Further, Holland's affidavit is based on inadmissible hearsay.

### 2. Personal Knowledge

"An affidavit or declaration used to support or oppose a motion must be made on *personal knowledge*, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). A court cannot consider an affidavit lacking personal knowledge when deciding a motion for summary judgment. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005).

An individual testifying as a corporate representative in a deposition, however, may testify to information "known or reasonably available *to the organization*." FED. R. CIV. P. 30(b)(6) (emphasis added). Thus, by its terms, Federal Rule of Civil Procedure 30 provides that a Rule 30(b)(6) witness is competent to testify even without personal knowledge. This is contrary to Federal Rule of Evidence 602, which provides that "[a] witness may testify to a matter *only if* evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." (emphasis added).

Thus, Rule 30(b)6) provides an implicit exception to Rule 602's personal knowledge requirement.

As a general note, lack of personal knowledge is different from hearsay. In the context of an affidavit, a knowledge issue exists if the affiant makes a statement about a fact, in effect claiming to have knowledge of that fact, but his other statements show he could not have personally known that fact. *See* FED. R. EVID. 602. A hearsay issue, in contrast, exists if the affiant purports to speak from his own knowledge about what someone else said, and the other person presumably had knowledge. *See* FED. R. EVID. 801. Thus, personal knowledge and hearsay address different concerns, though they are somewhat alike in policy. An exception to one issue is not an automatic exception to the other.

Here, the parties do not dispute that Holland had no personal knowledge of the manufacturing timeline. Although plaintiffs primarily argue that Holland's statement is hearsay, they also argue that the Court cannot consider it because Holland lacks personal knowledge. The Rule 30(b)(6) exception does not apply here, as defendant argues, for several reasons.

First, Rule 30 applies only to depositions, not affidavits. *See* FED. R. CIV. P. 30 ("Depositions by Oral Examination"). Defendant makes no argument addressing this distinction, and the Court finds no support for applying Rule 30(b)(6)'s exception to an affidavit.

Second, factually, Holland's affidavit does not identify him as defendant's corporate representative. Although the affidavit states, "I have spoken with [defendant's] employees" and "[b]ased on information available to [defendant,]" (Doc. 26, at 34–36), supports interpreting Holland as a corporate representative, other language weighs against this. The affidavit is entitled "Affidavit of Brad Holland" and signed by Holland without reference to his employment or defendant. (*Id.*). Thus, the affidavit is not clearly

12

presented as made by a corporate representative. Moreover, in its reply brief to plaintiffs'
resistance, defendant asserts that "[Holland] was named by [defendant] as its corporate
representative in response to the notice of deposition served by Plaintiffs under Rule
30(b)(6)" "*[a]fter* Mr. Holland submitted his affidavit." (Doc. 42, at 4). Thus, by
defendant's own apparent admission, Holland was not yet defendant's corporate
representative when he signed the affidavit.

Further, if the Court found Holland's affidavit was made as defendant's corporate
representative, its reading would arguably be in conflict with the record. The Court
refrains from interpreting this reading as in certain conflict because the record shows that
as of March 25, 2021, defendant intended to present Holland as its corporate
representative in a forthcoming Rule 30(b)(6) deposition. (Doc. 22-2, at 1 ("Before we
present Mr. Holland as our 30(b)(6) witness . . ..")). But Holland's Rule 30(b)(6)
deposition did not take place until August 19, 2021—well over a month after his affidavit
made on July 2, 2021. (Docs. 29; 36-3, at 1; 22-2, at 3). Certainly, defendant could
have changed its representative between March 2021 and July 2021. Indeed, when
corresponding about the deposition, plaintiffs' counsel mentioned that defendant's choice
of corporate representative may have changed. (*See* Doc. 22-3, at 1). On July 9, 2021,
plaintiffs filed a motion to compel discovery, in part to make defendant produce a
corporate representative. (Doc. 22). On July 16, 2021, defendant submitted the affidavit
as part of its motion for summary judgment. (Docs. 23, 25, & 26). On July 21, 2021,
defendant filed its resistance to plaintiffs' motion to compel, in which it named Holland
as its corporate representative and attached an email sent to plaintiffs' counsel on the
same day about scheduling Holland's deposition. (Docs. 27; 27-2). On July 26, 2021,
the Court granted plaintiffs' motion to compel, and Holland's deposition as defendant's
Rule 30(b)(6) corporate representative was taken on August 19, 2021. (Docs. 29; 36-3,
at 1). This uncertainty about scheduling Holland's deposition as defendant's corporate

representative only further complicates the issue of whether Holland could be considered defendant's corporate representative. At the very least, Holland had yet to testify as such when he signed the affidavit on July 2, 2021. Finally, plaintiffs' counsel asserted at oral argument that the manufacturing timeline topic was not included in the corporate representative notice until after Holland's affidavit.

For these reasons, Rule 30(b)(6) does not provide an exception to Holland's lack of personal knowledge. In sum, the Court cannot consider his statement about the manufacturing timeline as evidence. *Shanklin*, 397 F.3d at 602.

### 3. *Hearsay*

Even if Holland's statement about the manufacturing timeline was admissible under Rule 30(b)(6), it would nevertheless be inadmissible hearsay.

The Federal Rules of Evidence identify hearsay as:

> a statement that:
> (1) the declarant does not make while testifying at the current trial or hearing; and
> (2) a party offers in evidence to prove the truth of the matter asserted in the statement.

FED. R. EVID. 801(c). A court cannot consider inadmissible hearsay when deciding a motion for summary judgment because it can only assess the evidence on which a jury could rely, and a jury cannot properly rely on inadmissible hearsay. *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

Here, though Holland did not disclose it until his deposition, Holland made his statement about the manufacturing timeline based on statements made to him by Anderson and Hodges. As Holland's deposition shows, Anderson, defendant's vice president of sales, and Hodges, defendant's director of finance, provided Holland with information about the manufacturing timeline and did not show him any records in support of their

14

nine-month timeline between manufacture and sale of defendant's Vent fans. (Doc. 36-3, at 50, 67, 90).

Anderson's and Hodges's statements are hearsay. Anderson and Hodges are declarants because they made the statement which Holland repeated in his affidavit. FED. R. EVID. 801. By relying on their statements via Holland's affidavit, defendant offers their statements for the truth of the matter asserted—namely, that a fan purchased in late September/early October 2005 could not have been manufactured by defendant after January 2005. FED. R. EVID. 801. Defendant asserts no exception to hearsay, and the Court finds none applies.[6] Thus, even if Holland's statement about the manufacturing timeline was admissible under Rule 30(b)(6), the Court cannot consider Anderson's and Hodge's statements as evidence for purposes of ruling on a motion for summary judgment.

In sum, the Court cannot consider defendant's evidence of its manufacturing timeline. Thus, the Court cannot consider defendant's affirmative defense when ruling on its motion for summary judgment.

### 4.    *Defendant's Sham Affidavit Argument*

As another preliminary issue, the Court addresses defendant's assertion that Ranschau's supplemental declaration[7] is a sham affidavit that the Court cannot properly consider. (Doc. 42, at 5–8 (discussing (Doc. 36-3, at 19–21)).

---

[6] Holland's affidavit does not attest to the requirements of the so-called business records exception to hearsay. *See* FED. EVID. R. 803(6). Thus, the business records exception cannot apply, though defendant does not make this argument.

[7] Defendant refers to Ranschau's supplemental declaration as an "affidavit." (*See* Doc. 42, at 5–8). The document in question is entitled "declaration" and is not an affidavit because it was not signed in front of a notary. (*See* Doc. 36-3, at 20–21). Still, Ranschau submitted the document "under penalty of perjury." (*Id.*, at 21). Thus, the Court sees no substantive difference between it being a declaration or an affidavit.

Defendant asserts that Ranschau's supplemental declaration directly conflicts with plaintiffs' complaint. First, defendant argues that Ranschau's estimation in his complaint that he installed the fan on or after a specific date, June 10, 2005, "makes it apparent that [the fan] was installed on or near the date of June 10, 2005." (Doc. 42, at 6). Second, defendant argues that Ranschau's affidavit stating that he purchased the fan to "replace" the wind turbine fans, contradicts the complaint, in which he called the fan an "addition." (*Id.*, at 7–8). Third, defendant asserts that Ranschau's statement that he purchased the fan "from either Lowe's or Menards" conflicts with his earlier statement in Plaintiffs' Response to Defendant's Requests for Admission No. 2, in which Ranschau stated he "likely purchased [the fan] from Menards." (*Id.*, at 7). Finally, defendant argues that Ranschau's estimation in Plaintiffs' Response to Defendant's Interrogatory No. 6 that Ranschau purchased the fan "between late September/early October 2005" conflicts with his supplemental declaration's estimation that he purchased the fan between "late September 2005 and June 3, 2006." (*Id.*, at 6).

At oral argument, plaintiffs argued that Ranschau's declaration is not a sham and that the "between late September/early October 2005" estimate was merely imprecise. Further, plaintiffs assert that Ranschau had to clarify his earlier statement because defendant never deposed him. At most, plaintiffs argue, Ranschau's declaration is an opportunity for defendant to question Ranschau's credibility at trial.

A statement is a sham "if it contradicts prior testimony or is a sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before." *Button v. Dakota, Minnesota & Eastern R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020). *See also Abuy Develop., L.L.C. v. Yuba Motorsports, Inc.*, No. 4:06CV799SNL, 2008 WL 1777412, at *14 n.14 (E.D. Mo. Apr. 16, 2008) (finding a sham declaration). A contradictory statement must be directly contradictory to be a sham. *Baker v. Silver Oak Senior Living Manag. Co.*, 581 F.3d 684, at 690–91 (8th Cir. 2009)

(concluding that contradictory testimony that could be explained by plaintiff's reasonable misinterpretations of questions in a deposition was not a sham issue). A court may be more likely to view a contradictory statement as directly contradictory when the statement is one of pivotal importance in the case. *See, e.g.*, *Estate of Gray ex rel. Gray v. Bladi*, 880 N.W.2d 451, 465 (Iowa 2016). Finally, a sworn document is not a sham when it "merely explains portions of . . . prior [testimony] that may have been unclear." *See Button*, 963 F.3d at 830. When a statement is a sham, the court must disregard it when ruling on summary judgment. *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021).[8]

The Court finds defendant's first three reasons are insufficient to show that Ranschau's supplemental declaration was a sham. First, just because Ranschau provided a specific date as to when he might have purchased the fan does not mean that he installed the fan close to that date. Thus, Ranschau's declaration is not contradictory here. Second, the terms "replacement" and "addition" could reasonably be interchangeable in the context of changing a ventilation system. Thus, Ranschau's declaration is not contradictory here on that issue. Third, defendant's allegation that Ranschau contradicted himself as to where he purchased the fan is unfounded because Ranschau first stated that he "likely purchased" the fan from Menards. This wording does not foreclose the

---

[8] The Court notes that the Eighth Circuit has instructed district courts to "examine [sham affidavit] issues with extreme care" and advised that only "where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted." *Camfield Tires, Inc. v. Micheline Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983). Such guidance, however, appears where finding that a document is a sham would lead the court to grant summary judgment. *See id.*, *City of St. Joseph, Mo. V. Southwestern Bell* Telephone, 439 F.3d 468, 475–76 (8th Cir. 2006) (following *Camfield Tires*). As later discussed, however, a finding that Ranschau's declaration is a sham would not automatically yield a grant of summary judgment. Nevertheless, the Court will "articulate [its analysis] with care," as *Camfield Tires* requires. 719 F.2d at 1366.

possibility that he had purchased it elsewhere. Thus, Ranschau's declaration is not contradictory here.

Defendant's final reason, however, requires closer scrutiny. Ranschau first estimated that he "purchased [the fan] between late September/early October 2005 and installed [it] prior to June 3, 2006," and later estimated he "purchased [it] sometime between late September, 2005 and June 3, 2006." (*See* Docs. 26, at 15; 36-3, at 8, 20; 38, at 1). Plaintiffs' response to Interrogatory No. 6 reads: "[T]he Attic Fan was purchased between late September/early October 2005 and installed prior to June 3, 2006." (Doc. 36-3, at 8). "Between" suggests that the following dates will provide a range with a defined beginning and end. What follows instead is "late September/early October 2005." A reader might interpret this as a range between late September and early October 2005. Another reader might interpret "late September/early October 2005" as one date at the beginning of a range.

The Court finds that the circumstances here show that Ranschau's original estimated purchase date of "between late September/early October 2005" meant "between late September and early October 2005." After stating that the fan "was purchased between late September/early October 2005," plaintiffs' answer continues to expressly state that the fan was "installed prior to June 3, 2006." There is no indication that an additional date—one that might be used as the end date in a range—was missing from the estimated purchase date. Additionally, if there was a mistake with the original date, plaintiffs did not correct it. Accordingly, defendant's failure to depose Ranschau is irrelevant.

Because the Court finds that Ranschau's original estimated purchase date was between late September and early October 2005, Ranschau's supplemental declaration stating that he purchased the fan between late September 2005, and June 3, 2006 is directly contradictory. *See Baker*, 581 F.3d at 690–91. Thus, the Court finds that the

portion of Ranschau's supplemental declaration that amends the fan's estimated purchase date is a sham declaration. Thus, the Court strikes the first sentence of Paragraph 9 of Ranschau's supplemental declaration, found in plaintiffs' appendix to their resistance. (Doc. 36-3, at 20).

As the Court will discuss shortly, however, the key date in the Court's summary judgment analysis is when the fan was manufactured, not when Ranschau purchased it. Thus, the Court's finding here does not affect its analysis of defendant's motion for summary judgment.

### B.    *Summary Judgment*

As the party moving for summary judgment, defendant bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once defendant meets this burden, then plaintiffs—as the nonmoving party—must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley*, 415 F.3d at 910.

#### 1.    *Parties' Arguments*

Defendant argues that plaintiffs' claims fail for two reasons. First, defendant argues that plaintiffs' claim is barred by Iowa's statute of repose for improvements to real property. (Doc. 25, at 3–8 (citing IOWA CODE § 614.1(11)(a)). This statute imposes a fifteen-year statute of repose from when the cause of the action arose—here, when the product was *manufactured*. IOWA CODE § 614.1(11)(a).[9] Second, defendant argues that

_____

[9] As defendant asserts in its brief supporting its motion for summary judgment (Doc. 25, at 4 n.2), this statute was updated in 2017, restricting the fifteen-year statute of repose to only certain

plaintiffs do not show that defendant manufactured the attic fan whose malfunction caused plaintiffs' damage. (Doc. 25, at 8–11). Defendant asserts there are no disputed, material facts. (Doc. 23, at 2).

Plaintiffs resist defendant's motion. First, although plaintiffs admit that Ranschau purchased and installed the fan, plaintiffs argue the other two prongs of the test for improvements to real property are inapplicable. (Doc. 36, at 7–8). As such, plaintiffs argue that the relevant statute of repose is Iowa's general products liability statute. (*Id.*, at 6–7 (citing IOWA CODE § 614.1(2A)(a)). This statute imposes a fifteen-year statute of repose from when the product was first *purchased*. IOWA CODE § 614.1(2A)(a). Alternatively, plaintiffs argue that if the improvement to real property statute controls, then a genuine issue of material fact exists as to when the fan was manufactured. (*Id.*, at 8–9). Second, plaintiffs argue the evidence supports a finding that the attic fan was manufactured by defendant. (*Id.*, at 10–12). Specifically, plaintiffs argue that the Ranschau fan generally matched the exemplar fan manufactured by defendant, and any differences are excusable. (*Id.*, at 4, 10–12). Alternatively, plaintiffs argue that a genuine dispute of material fact exists as to who manufactured the Ranschau fan. (*Id.*, at 10–12).

### 2. *Statute of Repose*

Because the Court's summary judgment analysis depends on which statute of repose applies, the Court must first determine the applicable statute of repose. Here, the Court finds that improvements to real property statute of repose applies. Thus, plaintiffs must bring their action within fifteen years of the fan's manufacture.

---

types of actions. S.F. 413, 87th Gen. Assemb., Reg. Session (Iowa 2017). This change, however, did not apply to improvements to real property already in existence before the effective date, July 1, 2017. IOWA CODE § 614.1. There is no dispute that the Ranschau fan was installed before July 1, 2017.

### a.    *Improvement to Real Property*

Defendant argues that the relevant statute of repose is Iowa Code § 614.1(11), the improvements to real property statute.  (Doc. 25, at 3–8).  Defendant asserts that this statute bars any action arising fifteen years after the fan's manufacture.  (Doc. 25, at 3–8).  Plaintiffs argue that the improvements to real property statute does not apply because Ranschau's installation only satisfies one part of Iowa's improvement to real property test.  (Doc. 36, at 7–8).

A product is an improvement to real property when it is "[1] a permanent addition to or betterment of real property [2] that enhances its capital value[10] and [3] that involves the expenditure of labor or money and [4] is designed to make the property more useful or valuable as distinguished from ordinary repairs."  *St. Paul's Evangelical Lutheran Church v. City of Webster City*, 766 N.W.2d 796, 799 (Iowa 2009).  "Ordinary repairs" are repairs intended to fix damage.  *Id.* at 800.  Because Section 614.1 does not define "improvement," courts have looked to ordinary meaning when interpreting these requirements.  *See Krull v. Thermogas Co. of Northwood, Iowa*, 522 N.W.2d 607, 611 (Iowa 1994)).

The first prong of the test states two alternatives: that is, "a product must be either a 'permanent addition to *or* a betterment of real property that enhances its capital value.'"  *Jarnagin v. Fisher Controls Intern., Inc.*, 573 N.W.2d 34, 36 (1997).  Permanent addition is satisfied when a product physically attaches.  *Eastern Iowa Propane, Ltd. v.*

---

[10] Older cases require value enhancement when the product betters the real property, but not when the product is a permanent addition.  *Jarnagin v. Fisher Controls Intern., Inc.*, 573 N.W.2d 34, 36 (1997) (""[A] product must be either a 'permanent addition to *or* a betterment of real property that enhances its capital value.'").  The Court follows the test recently set out in *St. Paul's Evangelical Lutheran Church*.  Still, the distinction is inconsequential here because the Court finds that the fan is both an addition and a betterment, and finds that all the other prongs of the test are satisfied.

*Honeywell, Inc.*, 652 N.W.2d 462, 464–65 (Iowa 2002) ("When products are attached, they become improvements to real estate just as any other building components because the statute did not provide an exception for such attachments.") (citing *Krull*, 522 N.W.2d at 612); *Tallman v. W.R. Grace & Company-Conn*, 558 N.W.2d 208, 210. Courts have found permanent additions in a wide range of attachments, from a soap dish and fan, to asbestos spray and furnaces. *Patel v. Fleur de Lis Motor Inns, Inc.*, 771 F. Supp. 961, 965 (S.D. Iowa 1991) (soap dish); *Integrity Floorcovering, Inc. v. Broan-Nu Tone LLC*, 503 F.Supp.2d 1136, 1139 (D. Minn. 2007) (bathroom ventilation fan); *Tallman*, 558 N.W.2d at 209–211 (undisputed that asbestos spray attached to home); *Eastern Iowa Propane*, 652 N.W.2d at 464–65 (furnace); *Krull*, 522 N.W.2d at 612 (furnace). An attachment that will "last many years with proper maintenance" is considered permanent *Patel*, 771 F. Supp. At 965. An attachment can be permanent even if "the owner anticipates [its] replacement." *Id.*

Enhanced value can also be shown in many ways. Courts find value where the evidence does not clearly show an increase in resale value. For instance, the *Integrity Flooring* Court found a bathroom ventilation fan enhanced value when "the building would not have conformed to code, and no means would have existed for removing humidity from the bathroom, likely causing mildew, rust, peeling paint or wallpaper, and similar deterioration of the property" without it. Elsewhere, the *Jarnagin* Court found enhanced value when a furnace made a home more comfortable. *Jarnagin*, 573 N.W.2d at 36–37. Courts have even found value enhanced when experts disagreed. *Id.*

As mentioned above, courts have held that a single fan's installation is an improvement to real property. *See, e.g.*, *Integrity Floorcovering*, 503 F. Supp. 2d at 1139; *affirmed* 521 F.2d 914, 917–919 (8th Cir. 2008) (bathroom ventilation fan). Moreover, *Rolnick v. Gilson & Sons, Inc.*, which plaintiffs assert is "the only case in the United States to consider a single attic fan's installation as a potential improvement to

22

real property," did not hold that a fan was not an improvement to real property. *See generally* 260 N.J. Super. 564 (N.J. Sup. Ct. A.D., Dec. 10, 1992). The New Jersey statute at issue in *Rolnick* was a statute of repose limiting claims arising out of "the design, planning, supervision or construction of an improvement to real property." *See generally id.* The *Rolnick* Court held that the defendant was not protected by the statute of repose because the defendant was not a contractor. *Id.*, at 567–69. ("The sale and installation of such an appliance is not protected by the ten-year limitations period of the statute."). *See also Thelin v. Nutone, LLC*, No. 2:11CV1046 DAK, 2013 WL 56515559 (D. Utah, Oct. 16, 2013) (interpreting *Rolnick* the same way).

Here, the Court finds the Ranschaus improved their home by installing the attic fan. Iowa's definition of an "improvement to real property" is a relatively low hurdle and here, Ranschau's installation of the fan clears it.

First, the fan is both a permanent addition and betterment to the property. The fan is a permanent addition because it is an attachment. Ranschau removed three wind turbines that had been attached to his home and attached the ridge vents and electric fan instead. (*See* Docs. 24, at 2; 36-1, at 2–3; 36-2, at 2; 38, at 2). Ranschau "*installed* [the fan] *on* an originally existing attic gable." (Doc. 36-3, at 20) (emphasis added). Thus, the Ranschau fan was affixed to the attic structure, like the soap dish in *Patel*, which was found to be an improvement in part because it was affixed to bathroom sheetrock. *See Patel*, 771 F. Supp. At 965. The fan is also a permanent betterment, similar to the furnace in *Krull*. In *Krull*, the Court found the furnace was a permanent betterment because it "was an integral part of the house." *Krull*, 522 N.W.2d at 611–12. "Without a properly working furnace," the *Krull* Court wrote, "the home could not be comfortably used during cold weather." *Id.* at 612. Ranschau states that the fan's ventilation was necessary "to prevent excess heating, moisture build-up and to maintain the life of the roof above." (Doc. 36-3, at 20). Thus, the fan protects the roof, which

23

is integral to the comfort and condition of the home, and in turn makes it a permanent betterment. Finally, even if the Court construes plaintiffs' argument broadly to include a permanence argument based on how long the fan will last, an attachment can be permanent even if "the owner anticipates [its] replacement." *Patel*, 771 F. Supp. at 965. Thus, the Court finds that Ranschau attached the fan to the home and therefore made it a permanent addition and betterment to the property.

Second, it is undisputed that Ranschau purchased and personally installed the fan. (*See* Docs. 36-2, at 1, 17; 38, at 1) (purchase); (*See* Docs. 24, at 2; 36-1, at 2–3; 36-2, at 2; 38, at 2) (installation). Thus, the fan's installation involved the expenditure of both labor and money.

Third, by installing an attic fan instead of wind turbines, as the Ranschaus had before, the Ranschaus made their property more useful or valuable. (*See* Docs. 24, at 2; 36-1, at 2–3; 36-2, at 2; 38, at 2). The attic ventilation fan here is analogous to the bathroom ventilation fan in *Integrity Floorcovering*. 503 F.Supp.2d at 1139. The *Integrity Floorcovering* Court found that the property would have deteriorated without the bathroom ventilation fan. *Id*. Here, the Court finds that the Ranschau fan similarly prevented deterioration of the Ranschau attic and roof. The Court is not persuaded by plaintiffs' attempt to categorize the fan as an ordinary repair that simply "replaced" existing turbines and provided the same amount and quality of ventilation. (*See* Doc. 36, at 8); *Jarnagin*, 573 N.W.2d at 36–37. Ranschau states that installing the Ranschau fan did not solve any ventilation issues, because none existed. (Doc. 36-3, at 20). But if he wanted to maintain the property's value as far as the ventilation was concerned, Ranschau would have reinstalled the wind turbines—or, if that was not possible, replaced them with similar wind turbines. Instead, Ranshcau replaced the multiple pre-existing turbines—outdated, less efficient technology—with a single electric attic fan with a built-in

thermostat—new, more efficient technology.[11]    Despite plaintiffs' arguments to the contrary, a new, more efficient attic ventilation system is more valuable than an outdated less efficient one because it better protects the attic and roof.  So, even if the fan did not solve any existing ventilation issues or overtly make the Ranschau home more useful, its installation necessarily improved the home's value, even if by a small amount, because it more efficiently prevented the Ranschau property's deterioration.  Thus, the Court finds that its installation improved the home's value.

Fourth, the Court finds that the attic fan enhanced the Ranschau home's value beyond ordinary repairs, which are intended to fix damaged or nonfunctioning equipment.  The evidence does not suggest that the turbines were damaged or not functioning properly.  Moreover, if they were damaged or not functioning, Ranschau could have replaced the existing turbines with similar ones.  To the contrary, Ranschau attests that they were functioning adequately because the attic did not have any ventilation issues.  (*See* Doc. 36-3, at 20). Because the fan's installation was not intended to fix damage, the fan cannot be classified as an ordinary repair.  Thus, as described above, the Court finds the fan's installation was designed to make the property more valuable, as distinguished from ordinary repairs designed to return the property to its former state.

In sum, the Court finds Ranschau's installation of the attic fan satisfies all four prongs of the improvement to real property test.  Thus, the Court finds the fan was an improvement to real property.

---

[11] At oral argument, the Court questioned plaintiffs' counsel about the differences in technology between the wind turbines and the attic fan.  Plaintiffs did not assert that the products offered comparable ventilation.  Instead, plaintiffs argued that the fan could not be an improvement because the Ranschaus had no attic ventilation issues when the turbines were in place.

### b.    Calculation

This, however, does not end the Court's inquiry into Iowa Code § 614.1(11), because the Court must ascertain how many years plaintiffs have to bring their cause of action and from what date it must be calculated.

IOWA CODE § 614.1(11), Improvements to Real Property, states:

(a) an action arising out of the unsafe or defective condition of an improvement to real property based on tort and implied warranty and for contribution and indemnity, and founded on injury to property, real or personal, or injury to the person or wrongful death, shall not be brought more than *fifteen years after the date on which occurred the act or omission of the defendant alleged in the action to have been the cause of the injury* or death.

IOWA CODE § 614.1(11) (2016) (amended by Iowa Legislature under S.F. 413, 87 G.A. (2017)) (emphasis added).

Here, plaintiffs must sue defendant within fifteen years from the act or omission giving rise to their claims.    Because plaintiffs' action arises from strict liability and negligence relating to the fan's manufacture, the relevant "act or omission" is defendant's manufacture of the fan.    Thus, the fifteen-year limit is measured from when the fan was manufactured.    Although there is no evidence when the fan was manufactured, it must have been manufactured before it was purchased.    Plaintiffs filed their complaint on June 8, 2020.    Fifteen years prior to June 8, 2020, was June 8, 2005—several months before late September/early October 2005, the latest date the fan could have been purchased. (*See* Doc. 26, at 15).    Defendant does not present evidence showing that it could not have manufactured a fan sold between June 8, 2005, and late September/early October 2005. Thus, plaintiffs' action appears to comply with the statute of repose for improvement to real property's fifteen-year limit.

Case 1:20-cv-00060-CJW-MAR   Document 47   Filed 12/22/21   Page 26 of 32

### 3.    *Analysis*

Because the Court finds the improvements to real property statute of repose applies, plaintiffs must bring their action within fifteen years of the product's manufacture, because plaintiffs allege a manufacturing defect caused their injury. (Doc. 1, at 4–5). Here, plaintiffs filed their complaint on June 8, 2020. (Doc. 1). Thus, the Court must assess the evidence showing that the fan was manufactured by defendant within fifteen years before plaintiffs' complaint. If the evidence clearly shows that the fan was manufactured by defendant but before June 8, 2005, or that the fan was manufactured by someone other than defendant, then the Court must grant defendant's motion for summary judgment.

The Court finds that a grant of summary judgment is inappropriate here.

Defendant argues that it could not and did not manufacture the Ranschau fan. (Doc. 25, at 8–11). But defendant does not show a lack of genuine issue about the fan being manufactured by defendant but before June 8, 2005,[12] or a lack of genuine issue that the fan was manufactured by someone other than defendant. To the contrary, there are substantial undisputed similarities between the Ranschau fan and an exemplar fan manufactured by defendant. (Docs. 24, at 3–4; 36-1, at 6–8; 36-2, at 7; 38, 8–9). The only differences that plaintiffs' expert identified between the two fans were their motors' thickness and ventilation patterns. (Docs. 24, at 3–4; 36-1, at 6–8; 36-2, at 7; 38, 8–9). Defendant's expert, Meyer, points out these same, limited differences. (Docs. 36-2, at 8; 38, at 11). Defendant does the same. (Docs. 24, at 3–4). Even Holland, comparing the Ranschau fan to one manufactured by defendant, attests to their overarching resemblance. (*See* Docs. 36-1, at 6–7; 36-2, 7–8; 38, 9–10). Further, the differences

---

[12] As the Court has previously stated, the Court cannot consider the manufacturing timeline in Holland's affidavit. Apart from the manufacturing timeline, defendant presents no evidence showing that no genuine dispute exists as to whether defendant could have manufactured the Ranschau fan.

between the fans, which defendant dismisses (Doc. 36, at 10), might be explained in changes in defendant's design and subsequent manufacture of its fans in 2012—several years after Ranschau purchased the fan. (*See* Docs. 36-1, at 6–7; 36-2, 7–8; 38, 9–10). The lack of defendant's sticker on the post-fire Ranschau fan (*See* Docs. 36-2, at 9; 36-3, at 82; 38, at 12), and the inconclusive evidence about imposter fans (*See* Docs. 26, at 31–32; 36-3, at 142), further show a genuine dispute about who manufactured the Ranschau fan. In sum, defendant fails to discharge its initial burden.

Thus, the Court finds summary judgment is inappropriate and denies defendant's motion.

## IV.    *PLAINTIFFS' MOTION FOR SANCTIONS*

For the following reasons, the Court grants in part and denies in part plaintiffs' motion for sanctions.

### A.    *Parties' Arguments*

In moving for sanctions, plaintiffs argue that defendant's failure to disclose Anderson and Hodges during discovery was improper. (Doc. 43, at 1–4). Plaintiffs further allege that pertinent records were "intentionally withheld" until after plaintiffs deposed Holland. (*Id.*, at 4). Plaintiffs ask the Court to (1) strike Paragraph 4 of Holland's affidavit; (2) bar Hodges and Anderson from testifying at trial; (3) exclude defendant's sales records, whether they have been produced yet or not; and (4) strike defendant's statute of repose affirmative defense to the extent it relies on Paragraph 4. (*Id.*, at 5). Alternatively, plaintiffs ask the Court for the opportunity to depose Hodges and Anderson, and then to supplement their response to defendant's motion for summary judgment. (*Id.*).

In response, defendant asserts that plaintiffs have served no written discovery on defendant seeking information on the likely date of manufacture were the Ranschau fan manufactured by defendant. (Doc. 45, at 1). Further, defendant asserts that plaintiffs

28

knew about Anderson and Hodges and Holland's reliance on them beginning on August 19, 2021, yet did not inquire with defendant about these witnesses or the documents discussed and otherwise took no action until filing the motion for sanctions. (*Id.*, at 2). Additionally, as addressed above, defendant argues that the Court should construe Ranschau's declaration as a sham affidavit and interpret it along with the motion to sanction as "[p]laintiffs' desperate attempt to keep their case alive." (*Id.*, at 4–5).

### B. Relevant Law

A party must provide the name and contact information of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment. FED. R. CIV. P. 26(a)(i). Likewise, a disclosing party must disclose all documents "in its possession, custody, or control [that it] may use to support its claims or defenses" for the same purposes. FED. R. CIV. P. 26(a)(ii). Further, a party must supplement or correct a disclosure or responses when it learns "that in some material respect [its] disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A).

When a party fails to comply with Rules 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). A court may, in its discretion, impose other appropriate sanctions in addition to or instead of this sanction. FED. R. CIV. P. 37(c).

### C. Analysis

The Court finds that limited sanctions against defendant are appropriate because defendant failed to follow proper procedure. Whether under Rule 26(a) or Rule 26(e), defendant should have disclosed Anderson and Hodges as the sources for Holland's

manufacturing estimate in his affidavit. In light of plaintiffs' inaction in deposing Anderson or Hodges, and its delay in raising this issue, however, the Court finds the standard Rule 37(c) sanction is inappropriate here. Moreover, insofar as defendant's motion for summary judgment is concerned, defendant's violation is harmless because the Court did not consider Paragraph 4 of Holland's affidavit, which relied on Anderson and Hodges. *See* FED. R. CIV. P. 37(c)(1). Instead, the Court finds other sanctions are more appropriate. FED. R. CIV. P. 37.

The Court hereby sanctions defendant by extending discovery by a period of sixty days so plaintiffs can depose defendant's employees, Anderson and Hodges. The Court orders defendant to make Anderson and Hodges available to plaintiff for depositions. Discovery remains otherwise closed.

For the following reasons, the Court denies plaintiffs' requests for more severe sanctions, including striking Holland's statement, barring Hodges and Anderson from testifying at trial, and excluding defendant's sales records. First, in general, plaintiffs failed to take action when they could have and delayed their request for relief. Plaintiffs assert that defendant did not disclose either Hodges and Anderson during discovery. On March 15, 2021, plaintiffs served a corporate notice requesting Holland's deposition within thirty days. (Docs. 22, at 2; 22-3, at 1). When defendant failed to make Holland available (Doc. 22, at 3–4), the Court granted plaintiffs' motion to compel. (Doc. 29). The Court notes that plaintiffs did not ask to extend discovery before responding to defendant's motion for summary judgment, even though they had deposed Holland in August 2021 and knew which employees they could depose to obtain the manufacturing timeline information, were discovery extended. Instead, plaintiffs waited two months before raising the issue. (*See* Doc. 43) (filed October 29, 2021).

Second, the Court declines to sanction defendant by striking Holland's statement about the manufacturing timeline in Paragraph 4 of his affidavit, or striking defendant's

30

affirmative statute-of-repose defense based on the same evidence. As discussed above in defendant's motion for summary judgment, the Court cannot consider this evidence. Thus, there is no utility in striking evidence that the Court cannot and did not consider, or striking defendant's affirmative defense based on the same.[13]

Thus, in sum, the Court grants in part and denies in part plaintiffs' motion for sanctions.

In light of defendant's argument in its resistance to plaintiffs' motion for sanctions (Doc. 45), the Court notes that even if it had found that no part of Ranschau's declaration was a sham, this would not change the Court's ruling. Without an admissible manufacturing timeline in evidence, the Court cannot say whether defendant could have manufactured plaintiffs' attic fan, regardless of whether that manufacture must have taken place before Ranschau purchased the fan in late September/early October 2005 or between late September/early October 2005 and June 2006. Thus, a genuine dispute of material fact exists about whether defendant manufactured the attic fan and defendant's affirmative defense cannot preclude plaintiffs' claim. Because the Court has found that the improvement statute is the relevant statute of repose, however, defendant can still claim this affirmative defense at trial.

## V. CONCLUSION

For these reasons, defendant's motion for summary judgment is **denied.** Plaintiffs' motion for sanctions is **granted in part** and **denied in part.** The Court sanctions defendant by extending discovery by a period of sixty days from this order so plaintiffs can depose Anderson and Hodges. The Court orders defendant to make

---

[13] For this reason, as should be implied in the Court's ruling above, the Court also denies plaintiffs' request to stay its ruling on defendant's summary judgment motion until after plaintiffs depose Anderson and Hodges.

Anderson and Hodges available to plaintiffs for depositions during this time. Discovery remains otherwise closed.

       **IT IS SO ORDERED** this 22nd day of December, 2021.

                                  _____
                                    C.J. Williams
                                    United States District Judge
                                    Northern District of Iowa